## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

JANE CLARK,             )
      Plaintiff,      )      **CIVIL ACTION NO.**
              )
v.                 )
              )
BED BATH & BEYOND, INC.,  )   _____
      Defendant.    )
              )

## COMPLAINT

## I.    INTRODUCTION

Plaintiff, Jane Clark, files this Title III, ADA action, pursuant to 42 U.S.C. §12181, et. seq. In Count One of the Complaint, Plaintiff seeks to enjoin the Defendant to remove architectural barriers. In Count Two, Plaintiff seeks to enjoin Defendant to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three, Plaintiff seeks to enjoin the Defendant's use of the premises to provide full and equal enjoyment of the premises to the disabled. Counts Two and Three seek independent relief in addition to the removal of architectural barriers. Count Four seeks to enjoin Defendant's failure to design and construct the facility to be readily accessible to and usable by individuals with disabilities.

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1. Because this is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA") and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2. Venue is proper in this Court, the United States District Court for the Southern District of Alabama, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Southern District of Alabama.

3. Plaintiff, Jane Clark, suffered from multiple sclerosis for the past sixteen years which has since developed into chronic inflammatory demyelinating polyneuropathy which is more commonly known as ("CIDP"). As a result of her aliments, Ms. Clark almost exclusively requires a mobility chair to ambulate, although it is possible for her to stand for a very short time. Ms. Clark recently suffered a cerebrovascular accident, which is more commonly known as a "stroke", that has affected her motor and sensory functions, resulting in the episodes of paralysis of her muscle function. The extent of Ms.

Clark's physical problems limits her ability to care for herself, perform manual tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Ms. Clark is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that she suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; See also, 28 C.F.R. § 36.104.

4. Defendant, Bed Bath & Beyond, Inc., (hereinafter "BB&B"), is a corporation that is both registered to conduct business and is conducting business within the State of Alabama sufficient to create both general and specific in personam jurisdiction. Upon information and belief, Bed Bath & Beyond, Inc., "operates" and "leases" the Bed Bath & Beyond store located at 3800 Gulf Shores Parkway, Gulf Shores, Alabama. 42 U.S.C. § 12182. The BB&B store is a commercial facility in that the unit is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)((A). Moreover, the store provides a seamless shopping experience that makes a house a home with its wide assortment of home furnishings which includes but is not limited to bed linens and related items, bath items and kitchen textiles, kitchen and tabletop items, fine tabletop, basic housewares,

general home furnishings, and consumables, all at the right value to the public, which qualifies the BB&B store as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

5. All events giving rise to this lawsuit occurred in the Southern District of Alabama and the Defendant is a citizen thereof.

6. Plaintiff, Jane Clark, is a resident of Foley. She enjoys going out into the public to shop, eat, and socialize. Ms. Clark regularly visits BB&B to shop for household necessities and other goods. Ms. Clark intends to continue going to BB&B for its seamless shopping experience that makes a house a home with its wide assortment of home furnishings which includes but is not limited to bed linens and related items, bath items and kitchen textiles, kitchen and tabletop items, fine tabletop, basic housewares, general home furnishings, and consumables, all at the right value. Ms. Clark will return not only to shop at BB&B, but also to confirm compliance with the ADA by BB&B. Ms. Clark really wants this store fixed and will check on it until it is; then when it is fixed, she will continue going there to shop and also because the store has finally done what it is supposed to. Ms. Clark does not know exactly when she will go back to BB&B, because she has not planned out every shopping trip for the rest of her life. Such specific planning

is not necessary to invoke the ADA. See, e.g. *Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc.* No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*".). Nevertheless, Ms. Clark definitely intends to return to BB&B over and over again in the near future over time.

7. Because of the barriers described below in paragraph 19 and throughout the Complaint, Plaintiff has been denied full and equal enjoyment of the Defendant's premises on the basis of her disabilities.

8. Plaintiff accordingly, has Article III standing to pursue this case because (1) she is disabled, pursuant to the statutory and regulatory definition; (2) the Defendant's store is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) she has suffered a concrete and particularized injury by being denied access to the store by architectural barriers, by being denied access by the Defendant's practices described throughout this Complaint, and by Defendant's denial of the use of the store for her full and equal enjoyment as the able-bodied, as described throughout

the Complaint, and (4) because of these injuries there exists a genuine threat of imminent future injury, as described in paragraph 17.

## II.   PLAINTIFF'S CLAIMS

### ADA, Title III

9. On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

10. Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's establishment is a place of public accommodation in that it is a store with seamless shopping experience that makes a house a home with its wide assortment of home furnishings which includes but is not limited to bed linens and related items, bath items and kitchen textiles, kitchen and tabletop items, fine tabletop, basic housewares, general home furnishings, and consumables, all at the right value. Accordingly, it is covered by the ADA and must comply with the Act.

# COUNT ONE
# VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12182(b)(2)(A)(iv)
### *(Architectural Barriers)*

**Defendant's Existing Facility Is Subject to the 2010 ADA Design Standards for the Portions of the Facility Addressed in This Complaint**

11. Plaintiff is informed and believes based on publicly available information that the BB&B store located at 3800 Gulf Shores Parkway, Gulf Shores, Alabama, was originally constructed on or around 2006 with alterations and/or improvements made to the Bed Bath & Beyond retail store thereafter.

12. The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.*

§ 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible.  42 U.S.C.  § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

13. New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local

government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable.* See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and

that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

14. For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

## Plaintiff's Concrete and Particularized Standing to Pursue an Injunction

15. The Defendant has discriminated, and continues to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at the BB&B store in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq. As "new construction", the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) and (b).  Defendant's failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

16. As described above, prior to the filing of this lawsuit, Plaintiff was denied full and safe access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendant's facility. Plaintiff's access was inhibited by each of the

described architectural barriers detailed in this Complaint which remain at the facility in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

17. Plaintiff has definite plans to return to the BB&B store in the future, as described in paragraph 6. Plaintiff will return to BB&B within the next few months not only to shop and enjoy the seamless shopping experience that makes a house a home with its wide assortment of home furnishings which includes but is not limited to bed linens and related items, bath items and kitchen textiles, kitchen and tabletop items, fine tabletop, basic housewares, general home furnishings, and consumables, all at the right value, but also to see if BB&B has repaired the barriers, and changed its practices and procedures. Even when BB&B is repaired, Plaintiff will continue to go there to shop. She certainly does not want to stop going when BB&B is repaired and its practices are modified; that is all the more reason to go. Absent remedial action by Defendant, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendant on the basis of her disabilities. The Eleventh Circuit,

held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied *"there is a 100% likelihood that plaintiff… will suffer the alleged injury again when he returns to the store."* Due to the definiteness of Plaintiff's future plans to continue visiting the subject facility, there exists a genuine threat of imminent future injury.

## Architectural Barriers

18. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

19. Plaintiff has been throughout the store, from the entrance to and throughout the shopping aisles; to the check-out service counters, to the restroom, throughout circulation paths and accessible routes, service areas, paths of travel, and in particular but not limited to all of which is more specifically described below. Defendant's facility located at 3800 Gulf Shores Parkway, Gulf Shores, Alabama, more commonly known as "BB&B", violates the ADA in particular but not limited to:

## CHECK-OUT SERVICE COUNTERS

a) Bed Bath & Beyond provides a check-out counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

    A.  The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

        i.  There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

        ii.  There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

D. There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E. BB&B provides a point of sale machine to transact business at the check-out counter for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counter;

F. The current practice at BB&B is to place merchandise within the required clear counter surface;

G. BB&B fails to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

## CUSTOMER SERVICE COUNTER

b) BB&B provides a customer service counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

    A. The customer service counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter.

        i.   There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

        ii.   There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing customer service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the customer service counter that extends the same depth as the non-accessible portion of the check-out counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** BB&B provides a point of sale machine to transact business at the customer service counter for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counter;

**F.** The current practice at BB&B is to place merchandise within the required clear counter surface;

**G.** The current practice at BB&B is to locate merchandise display tables within the required clear floor space at the customer service counter;

H. BB&B fails to maintain the accessible features at the customer service counter that are required to be readily accessible to and usable by individuals with disabilities;

## ACCESSIBLE ROUTE

c) BB&B provides an accessible route to and throughout the shopping aisles throughout the store for able-bodied individuals, but fails to provide an ADA accessible route to and throughout the shopping retail aisles for individuals with disabilities which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at the BB&B store:

    i. Throughout the accessible route there is merchandise that is for sale to the public that obstructs the required 36 inches of clear floor space on the purported accessible route;

    ii. The current practice at BB&B is to maintain merchandise within the required clear floor or ground space of the purported accessible route;

    iii. The retail store shopping aisles are positioned and oriented in a way that outright excludes disabled individuals from being afforded the opportunity to

maneuver up and down aisled and make turns at the passing spaces;

iv. BB&B fails to have or otherwise fails to enforce its policies, practices, or procedures on maintaining in operable working condition the features of the purported accessible route to and throughout the store shopping aisles so that the goods and services are readily accessible to and usable by individuals with disabilities;

v. BB&B has ineffective policies, practices, or procedures that ensures the purported accessible route is readily accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without disabilities;

vi. BB&B fails to maintain the accessible features of the purported accessible route so that it is readily accessible to and usable by individuals with disabilities;

## WOMEN'S RESTROOM

**d)** There is signage for able-bodied individuals designating a permanent interior space within the "restroom area" as the Men's/Women's restroom, however there is no signage displaying the International Symbol of Accessibility identifying the interior space within the restroom area as ADA accessible;

**e)** BB&B provides a toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

    **i.** The purported wheelchair accessible toilet compartment and its associated elements fail to conform to the ADA Standards for Accessible Design;

    **ii.** The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum in front of the water closet;

iii. The toilet paper dispenser fails to be properly maintained;

iv. The toilet compartment fails to measure the required dimensions of 59 inches deep and 60 inches wide;

v. BB&B fails to maintain in operable working condition the accessible features of the water closet's toilet seat so that it is readily usable by individuals with disabilities;

vi. The side wall grab bar fails to extend the required distance of 54 inches from the rear wall;

vii. The side wall grab bar fails to be properly located 33-36 inches above the finished floor;

viii. The rear wall grab bar is not properly located 12 inches on the closed side of the toilet room and 24 inches on the transfer side;

ix. The rear wall grab bar fails to be properly located 33-36 inches above the finished floor.

f) BB&B provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience

afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

i. The soap dispenser requires two hands to operate and/or requires tight grasping, pinching and/or twisting of the wrist;

ii. The purported ADA accessible lavatory fails to provide the required knee and toe clearance under the lavatory for a wheel chair user to be afforded the opportunity to position for a forward approach;

iii. The lavatory sink fails to provide the required 30 x 48 inches of clear floor space serving the lavatory;

iv. The lavatory sink fails to provide 30x48 inches of clear floor space at the lavatory that provides adjacent clear floor space and/or connects to an accessible route;

v. The current practice at BB&B is to place a disposable soap dispenser within the toilet room rather than an accessible soap dispenser;

vi. The soap dispenser exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

vii.   BB&B The reflecting surface of the mirror exceeds the maximum allowed height of 40 inches above the finished floor;

20. To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

21. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. §12205.

22. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order the Defendant to modify its policies, practices, and procedures, to provide equal use of its facilities, services and benefits to disabled individuals.

## COUNT TWO
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
### 42 U.S.C. § 12182(b)(2)(A)(ii)
*(Practices, procedures, and policies denying equal benefits)*

### ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers

23.  Plaintiff re-alleges paragraphs 1-22 above.

24.  The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1) (emphasis added).

25.  The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A) )(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids

historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." <u>See</u> 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

26. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

27. To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to),

or operates a place of public accommodation." 42 U.S.C. 12182.

28. By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

29. For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in <u>Rendon v. Valleycrest Prod., Ltd.</u> 294 F.3d 1279, (11th Cir. 2002) that:

> *"A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both <u>tangible barriers</u> (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and <u>intangible barriers</u> (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges."*

## Defendant's Failed Practices and Lack of Policies Are Discriminatory

**30.** Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> "*a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*"

**31.** Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled.

**32.** As detailed below, Defendant has failed to make reasonable modifications in its policies, practices, and procedures that are necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated or otherwise treated Plaintiff differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has discriminated against Plaintiff.

Defendant will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

33. Defendant either has no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

34. Defendant's use of its store, and its practices at the Bed Bath & Beyond retail store located at 3800 Gulf Shores Parkway, Gulf Shores, Alabama, literally creates barriers and in so doing deny Plaintiff the full and equal enjoyment of the store. Those practices include:

   a) Defendant makes its check-out counters inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface, which means Ms. Clark cannot fully and equally use the counters to transact business in the way the non-disabled do, because the non-disabled have counters they

can use to independently transact business and discuss
services with employees at the counters;

**b)** Defendant makes its customer service counters inaccessible
for use by the disabled by failing to provide either a parallel or
a forward approach to the counters with the required clear
counter surface, which means Ms. Clark cannot fully and
equally use the counters to transact business in the way the
non-disabled do, because the non-disabled have counters they
can use to independently transact business and discuss
services with employees at the counters;

**c)** Point of sale machines at the check-out counters are located
so as to be inaccessible, which means that Ms. Clark is forced
to hand her card to an employee to swipe for her, and then
forced to give her PIN number to an employee to type in for
her, which denies Ms. Clark the ability to equally use the point
of sale machines as the non-disabled, who can independently
use the machines to pay for their purchases, though she
cannot;

**d)** Defendant fails to provide an accessible route to and

throughout the shopping aisles in the store, which means that Ms. Clark is forced to struggle and maneuver in every way possible in order to travel and move throughout the shopping aisles, if she can travel and move throughout them at all. Accordingly, she cannot fully and equally use the store as the non-disabled can;

e) Defendant fails to provide an accessible route to the restroom by locating boxes and plastic crates within the required clear floor space on the purported accessible route, which means Ms. Clark is forced to struggle and maneuver in any way possible in order to travel and move throughout the purported accessible route to get to the toilet room, if she can get to it at all. Accordingly, she cannot fully and equally use the store as the non-disabled can;

f) Defendant fails to provide signage in the restroom area displaying the International Symbol of Accessibility informing and directing disabled individuals to an ADA accessible restroom, which means that BB&B does not even claim to have an ADA accessible restroom and that Ms. Clark has to use trial and error to decide if she can use the restroom

at all, unlike the non-disabled who can freely use the toilet room;

g) Defendant makes its toilet facilities inaccessible for use by the disabled by failing to maintain any ADA accessible elements within the restrooms so that Plaintiff is afforded the opportunity to independently use the restroom, or clean up, or move into and throughout the restroom, whereas non-disabled individuals are able to independently use the restrooms;

h) Defendant makes its customer service counters inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface, which means Plaintiffs cannot fully and equally use the customer service counter to receive "service" and transact business in the same way the non-disabled do, because the non-disabled have counters they can use to receive service;

i) Defendant fails to provide a restroom that is big enough for the disabled to use, whereas Defendant provides a restroom sufficiently large for the able-bodied;

**j)** Defendant uses the accessible counter surfaces for the sale of merchandise, yet provides counter surface for the able-bodied;

**k)** Defendant's policies, practices, and procedures are conducted without regard to disabled individuals.

35. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

36. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant's existing practice is both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon demand by the disabled.

37. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, and procedures or else it failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at its store as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the

goods, services, privileges, advantages, or accommodations of BB&B, as described above in detail.

38. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

39. To date, the Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

40. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiff hereby demands that Defendant both create and adopt a corporate practice and policy that Defendant (1) will fully comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are permanently removed from Defendant's store consistent with the ADA; (2) Defendant will provide the disabled, including those with

mobility limitations full and equal use and enjoyment of the BB&B store; (3) Defendant will modify its practice of making ADA Title III architectural barrier remediations only upon demand by the disabled.

41. As pled above Bed Bath Beyond, Inc. "operates" and "leases" the BB&B Store located at 3800 Gulf Shores Parkway, Gulf Shores, Alabama, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

42. The ADA is over twenty-five (25) years old. Defendant knows it must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

43. By this Complaint, Plaintiff provides sufficient notice of her demands for an alteration in Defendant's policies, practices, and procedures.

44. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

**45.** Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*

**46.** Plaintiff re-alleges paragraphs 1-45 above.

**47.** 42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

**48.** Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

**49.** Congress also found that: *"individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification*

standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities, 42 U.S.C. § 12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals*;" 42 U.S.C. § 12101(a)(7). Congress even found that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.*" 42 U.S.C. § 12101(a)(8).

50.   In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

51.   The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or

benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

52. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

53. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

**54.** To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.* 42 U.S.C. 12101(a)(5); *see also* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

**55.** For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public

accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

56. The keystone for this analysis is Defendant *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005) See also, *Baughman v. Walt Disney World Company*, 685 F.3D 1131, 1135 (9th Cir. 2012).

57. Plaintiff, Jane Clark, was denied full and equal access to BB&B. Plaintiff specifically and definitely wants to return to the Defendant's store to enjoy the Seamless shopping experience that makes a house a home with its wide assortment of home furnishings which includes but is not limited to bed linens and related items, bath items and kitchen textiles, kitchen and tabletop items, fine tabletop, basic housewares, general home furnishings, and consumables, all at the right value. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals and which

Defendant has failed to provide to Plaintiff as follows: Defendant failed to provide an accessible route to and throughout the store and shopping aisles for Plaintiff, which means that unlike the non-disabled, Plaintiff is forced to struggle and maneuver in all sorts of ways to move throughout the store and shopping aisles, if she can make it at all; Defendant failed to provide an accessible route to and throughout the toilet room area for Plaintiff, which means that unlike the non-disabled, Plaintiff is forced to struggle and maneuver in every way possible just to get to the toilet room area independently, if she can make it at all; Defendant failed to provide an accessible route to the toilet room for Plaintiff, which means that unlike the non-disabled, Plaintiff is forced to struggle and maneuver in every way possible just to get into and out of the toilet room independently, if she can make it at all; Defendant failed to provide Plaintiff that same experience that non-disabled individuals have when shopping at BB&B; Defendant failed to provide Plaintiff the same experience at its check-out counters throughout its store by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface, which means Plaintiff cannot fully and equally use the check-out counters to transact business throughout BB&B in

the same way the non-disabled do, because the non-disabled have counters they can use independently to transact business and discuss services with employees at the counters; Defendant failed to provide Plaintiff the same experience at its toilet compartment room by failing to provide a large enough room to be accessible by the disabled in wheelchairs and further by failing to maintain any ADA accessible elements within the toilet compartment room so that Plaintiff is not afforded the opportunity to independently use the restroom, or clean up, or move into and throughout the restroom, whereas non-disabled individuals are able to independently use the toilet room; Defendant failed to maintain the accessible signage of  BB&B so that Plaintiff, unlike the non-disabled, does not even know what route and what facilities are usable by individuals with disabilities; Defendant's failure to identify by signage what is accessible and what is not accessible makes Plaintiff inferior, segregated or otherwise treated differently, because unlike the non-disabled, Plaintiff has to guess and speculate and determine by trial and error what facilities she can even use; and all the foregoing failures by Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have when shopping at BB&B.

**58.** In its Preamble to the title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

**59.** The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) require that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided "inferior seating" and "segregated accommodations" compared to non-disabled individuals, thus relegating persons who

use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

60. Thus, Defendant's "use" of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated the disabled from the non-disabled individuals. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

61. Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facilities during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege,

advantage, or accommodations" of BB&B.

62. Defendant's conduct and Defendant's unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally.

63. Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facility. 28 C.F.R.§ 36.211(a).

64. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

65. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

## COUNT FOUR
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12183(a)(1)
### *(Failure to design and construct facility for ADA compliance)*

66. Plaintiff re-alleges paragraphs 1 – 65 above.

67. 42 U.S.C. § 12183(a)(1) provides:

> *[Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.*

68. Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination ... continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." Id. § 12101(a)(5). In its Preamble to the title III regulation, the Department of Justice recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar

events of a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

69. To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities". This very requirement is intended to enable persons with disabilities *"to get to, enter and use a facility."* H.R. Rep. No. 101-485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," id., as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is *to ensure that the service offered to persons with disabilities is equal to the service offered to others.*" *Id.*

70. As the legislative history makes clear, the ADA is geared to the future-- the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, *while requiring all new construction to be accessible.* H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

71. To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design ("Standards") are incorporated into the Department of Justice's regulation implementing title III of the ADA, 28 C.F.R. Part 36, Appendix A. The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances, common areas, interior stairways and elevators, restrooms, dressing rooms and sales/service areas.

72. Defendant "operates" and "leases" the BB&B Home Goods store and is directly involved in the designing and/or construction of its store in this litigation for first occupancy after January 1993.

73. Defendant was and is required to design and construct the BB&B store to be "readily accessible to and usable by individuals with disabilities." Defendant violated the statute by failing to design and construct *its retail store to be* readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendant further violated the statute by failing to

design and construct its store in compliance with the ADA during planned alterations as described throughout this Complaint.

74. According to Defendant's own publicly available information, Defendant chose to design its store in a way that is not ADA Title III compliant whatsoever. Defendant literally strategically locates merchandise throughout its store without any regard to the disabled. Defendant's systematic design of its store fails to afford disabled individuals the same shopping experience that is afforded to individuals without disabilities.

75. To date, the Defendant's discriminating actions continue.

76. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

77. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendant.

**WHEREFORE**, premises considered, Jane Clark demands judgment against the Defendant on Counts One through Four and requests the following injunctive and declaratory relief:

1. That the Court declare that the property owned and business operated by the Defendant as well as all Defendant's illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2. That the Court enter an order enjoining the Defendant to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and their implementing regulations, as stated in Count One;

3. That the Court enter an order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future.

4.   That the Court enter an order directing the Defendant to provide Plaintiff full and equal access both to the BB&B experience and to the use of the BB&B facility, and further order Defendant to maintain the required accessible features at the store so that Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5.   That the Court enter an Order directing the Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

6.   That the Court enjoin Defendant to remediate the BB&B store to the proper level of accessibility required for the design and construction of the facility for first occupancy, as stated in Count Four;

7.   That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff; and

8.   That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the _13th_ Day of April, 2017.

/s/ _Cassie E. Taylor_

**CASSIE E. TAYLOR**
**BPR # AL-8297N67R**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.356.5314 p
334.819.4032 f
CET@ADA-Firm.com
*Attorney for the Plaintiff*

/s

**L. LANDIS SEXTON**
**BPR # AL-5057N71L**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.819.4030 p
334.819.4032 f
LLS@ADA-Firm.com
*Attorney for the Plaintiff*

/s

**Tracy G. BirdSong**
**BPR # AL-2170D64T**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.819.4030 p
334.819.4032 f
TGB@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this _13th_ day of April, 2017 to the following:

**BED BATH & BEYOND INC.**
c/o PRENTICE HALL CORPORATION SYSTEM INC
attn.: Registered Agent
150 S PERRY ST
MONTGOMERY, AL 36104

/s/ Cassie E. Taylor
**CASSIE E. TAYLOR**
**BPR # AL-8297N67R**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.356.5314 p
334.819.4032 f
CET@ADA-Firm.com
*Attorney for the Plaintiff*